## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVAN BROWN, | : | CIVIL NO. 1:22-CV-1401 |
| | : | |
| Plaintiff, | : | (Chief Judge Brann) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| ADRIENNE MONROY, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Factual Background

The factual background of this case relates to the arrest of the plaintiff, Evan Brown, on DUI and child endangerment charges of which he was subsequently convicted. His complaint alleges constitutional violations against police officers from two departments – Lower Swatara Police Department and Steelton Police – under 42 U.S.C. § 1983 for false arrest, false imprisonment, failure to intervene, and excessive force as well as state law tort claims of assault and battery. The factual background, as explained by Brown in his complaint, can be simply stated: On January 5th, 2022, Lower Swatara Police Department requested Steelton Police to detain Brown for a possible domestic violence incident. (Doc. 1, at 3). Officers Monroy and Smith of the Steelton Police encountered Brown asleep in the passenger seat of a vehicle. (Id.)

Brown complied with the officers' requests to exit the vehicle and Officer Monroy asked him to turn around to place handcuffs on him. (Id.) Brown then alleges that Officers Monroy, Smith, and Etnoyer wrestled him into handcuffs, violently twisted his arms behind his back, and dropped him on his tailbone, causing him to be unable to sit on his backside for three weeks, before placing him in the back of the police car. (Id., at 3, 4). He alleges that the officers did not have probable cause to arrest him because he was not seen driving and Officer Monroy testified that she did not smell alcohol on the plaintiff and that they used excessive force in effectuating the arrest. (Id.)

Brown was arrested, charged, and subsequently convicted of child endangerment, DUI, reckless endangerment, and vandalism. See Commonwealth v. Brown, No. MJ-12201-CR-0000022-2022; Commonwealth v. Brown, No. CP-22-CR-0000356-2022.[1] Brown commenced this action by filing a complaint on September 8, 2022, while he was still a pretrial detainee housed at the Dauphin County Prison. (Doc. 1). On September 5th, 2023, the Court dismissed the complaint against the Lower Swatara Police Department defendants without prejudice to the

_____

[1] The Court previously took judicial notice of the state court dockets related to Brown's criminal case at MJ-12201-CR-0000022-2022 (Magisterial District Judge docket) and CP-22-CR0000356-2022 (Court of Common Pleas for Dauphin County docket), which are available to the public online at https://ujsportal.pacourts.us/CaseSearch.

plaintiff filing an amended complaint. The plaintiff never filed an amended complaint, despite the Court's best efforts to ensure the plaintiff had notice of the dismissal and the opportunity to do so. (Docs. 23, 25). Thus, following a second motion from the Lower Swatara Police Department defendants, the Court dismissed the complaint with respect to Defendants Thomas and Tingle and terminated them from this case. (Docs. 29, 32).

On July 29, 2024, the remaining defendants in this case, Steelton police officers Monroy, Smith, and Etnoyer, filed a motion to dismiss the complaint with respect to the false arrest, false imprisonment, failure to intervene, excessive force, and assault and battery claims against them. (Doc. 41). They argue that Brown is collaterally estopped from asserting his claims of false arrest, false imprisonment, and failure to intervene against them where the Court has already dismissed these claims as to the Lower Swatara defendants and that he his claims of excessive force and assault and battery fail on the merits. (Doc. 42). For the reasons set forth below, we recommend the defendants' motion to dismiss be granted in part and denied in part as follows: we recommend the Court grant the motion to dismiss with regard to

the false arrest, false imprisonment, and failure to intervene claims, but deny the motion with regard to the plaintiff's excessive force and assault and battery claims.[2]

## II.    Discussion

### A.    Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

---

[2] The plaintiff references "Article 1, Section 8 – Assault and Battery" in his complaint. The defendants construe this as an improper claim for monetary damages under the Pennsylvania Constitution. See Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution.") On this score the defendants are correct that we may not construe a monetary damages claim under the state constitution. However, we are reminded that "a document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Accordingly, we construe this complaint as asserting a Pennsylvania common law tort claim for assault and battery. We will leave for another day the question of whether such claims are barred by the doctrine of sovereign immunity.

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions

will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

6

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead

to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when

determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. <u>Brown's False Arrest, False Imprisonment, and Failure to Intervene Claims Should Be Dismissed.</u>

Brown asserts that Officers Monroy, Smith, and Etnoyer violated his Fourth Amendment right to be free from unreasonable searches and seizures by executing his arrest. Broadly construed, he asserts claims of false arrest and false imprisonment alleging that the officers did not have probable cause to arrest him, despite his subsequent conviction. This federal constitutional claim implicates Brown's rights under the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. <u>See Walmsley v. Philadelphia</u>, 872 F.2d 546, 551 (3d Cir. 1989) (citing <u>Patzig v. O'Neill</u>, 577 F.2d 841, 848 (3d Cir. 1978)).

However, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest. <u>Groman v. Twp. of Manalapan,</u> 47 F.3d

628, 634 (3d Cir. 1995). Thus, proof that probable cause was lacking is essential to any § 1983 claim arising out of the arrest or detention of an individual. For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). An arrest by a police officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v.

California, 401 U.S. 797, 804 (1971)). Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972) ). Accordingly, the evidentiary standard for probable cause is significantly lower than that required for conviction. Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime). Because an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the constitutional validity of an arrest does not turn on whether the suspect actually committed any crime, Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003).

Thus, "[t]he determination that probable cause exists is fundamentally a factual analysis that must be performed by officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). Although officers on the scene may draw inferences and make deductions that might elude an untrained

person, United States v. Cortez, 449 U.S. 411, 418 (1981), "an officer's inferences and deductions can only justify a warrantless arrest if the government satisfies its burden of establishing the probable cause necessary to support the arrest," Myers, 308 F.3d at 255.

In this case, Brown's Fourth Amendment allegations of false arrest and false imprisonment are fatally flawed in a fundamental way: the responding officers plainly had probable cause to arrest him and he was ultimately convicted of the crimes for which he was arrested. Indeed, this Court has already found that, with regard to this arrest:

> Here, Brown's complaint does not allege sufficient facts to state a plausible claim that he was searched or seized without probable cause. Brown broadly alleges that "Officer Thomas did not have probable cause to validate Officer Monroy's arrest," where Officer Thomas did not see Brown driving and was not present at the time Brown was arrested to observe any recent physical injury to the victim, Brown's girlfriend. (Doc. 1, at 3). Brown's claims directly undermine his state conviction for endangering the welfare of children, institutional vandalism of an educational facility, a DUI, and recklessly endangering another person, in which the state court found Brown guilty of all five charges. Further, the undersigned finds that the complaint does not identify any independent or exculpatory evidence of the victim's credibly such that probable cause would not exist. See Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) ("[While] a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause, . . . [i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist."). Thus, the undersigned finds that Defendants had sufficient probable cause to believe that the underlying crimes

occurred. Defendants were not required to conduct a full-scale investigation before making an arrest. "Statements made to a police officer from a source whom he finds credible can be sufficient to provide probable cause." Nwani v. Greene, No. CV 17-3017, 2018 WL 2426145, at *6 (E.D. Pa. May 30, 2018). The officer is not required to conduct an extensive investigation and identify other witnesses. See Merkle, 211 F.3d at 790 n.8 (finding that a detective "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."). Since Brown has failed to show his arrest was made without probable cause, he cannot proceed on his false arrest and false imprisonment claims. See Orsatti, 71 F.3d at 482.

(Doc. 19 at 11-12).

Despite Brown's argument that the Court's analysis of whether probable cause existed with regard to the Lower Swatara defendants is in some way distinct from that of the Steelton defendants this cannot be true where the same facts of the arrest apply equally to all defendants. Indeed, even a renewed review of the factual allegations with respect to the Steelton defendants, including a review of the affidavit of probable cause presented as an exhibit by Brown, reinforces the Court's prior determination that probable cause existed as a matter of law. The affidavit of probable cause, signed by both the affiant officer and a Magisterial District Judge, explains that a third party notified the police of a domestic violence incident between the plaintiff, who the third-party caller identified by name, and his girlfriend, and located the plaintiff in a car outside the residence. (Doc. 1-1, at 2; Doc. 44-1). Indeed, the Court found this to be enough where "[s]tatements made to a police officer from a

source whom he finds credible can be sufficient to provide probable cause." <u>Nwani v. Greene</u>, No. CV 17-3017, 2018 WL 2426145, at *6 (E.D. Pa. May 30, 2018). Moreover, the police then interviewed the plaintiff's girlfriend, who was inside the residence, who confirmed that Brown was intoxicated and cursing at her, forcibly drove her and her children to her mother's home while intoxicated and punched her in the arm numerous times.[3] (Doc. 1-1, at 2; Doc. 44-1). The narrative describing the

---

3 The Court also previously analyzed these claims under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), which requires dismissal of certain claims under § 1983 where there has been a conviction of the underlying crime for which the plaintiff was arrested, also called the favorable termination rule. As to the Lower Swatara defendants, the Court declined to dismiss these claims under <u>Heck</u>, citing the court of appeals' view that "claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in <u>Heck</u> which necessarily implicate the validity of a conviction or sentence." <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 n.5 (3d Cir. 1998). To be sure, the Third Circuit has not automatically applied <u>Heck</u>'s favorable termination rule to all § 1983 claims where there is a conviction on the charges but has instructed that "[a] district court must make a fact-based inquiry to determine whether a successful § 1983 action would undermine the validity of a conviction or sentence." <u>Shelley v. Wilson</u>, 152 F.App'x 126, 129 (3d Cir. 2005); <u>see also</u> <u>Olick v. Pennsylvania</u>, 739 F. App'x 722, 726 (3d Cir. 2018) ("<u>Heck</u> does not automatically bar [ ] claims of false arrest and false imprisonment . . . [h]owever there are circumstances in which <u>Heck</u> may bar such claims.").Thus, the Third Circuit has affirmed dismissal of false arrest and false imprisonment claims under <u>Heck</u> where success on those claims would conflict with the prior judicial resolution of the criminal proceedings. <u>See</u> <u>Bressi v. Brennen</u>, 823 F. App'x 116, 119 (3d Cir. 2020) ("[B]ecause [the plaintiff's] claims amount to challenges to the validity of his convictions, and because those convictions do not appear to have been invalidated, the claims are barred by <u>Heck</u>); <u>Wells v. King</u>, 232 F. App'x 148, 149 (3d Cir. 2007) (affirming dismissal of false arrest and false imprisonment claims where the actual claim underlying his assertions was the challenge to his conviction). In our view, Brown's argument that the officers did not have probable cause to arrest him for DUI

facts within the knowledge of the officers at the time of the arrest and confirmed in a legal court document attached to the plaintiff's brief, clearly demonstrate that probable cause existed for the officers to arrest Brown.

Moreover, given the Court's prior determination, on the same facts, that probable cause existed, and our independent assessment confirming the same, it appears the officers are also entitled to qualified immunity on these claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect

---

because "Officer Monroy testified that she did not smell alcohol on the plaintiff" necessarily challenges the validity of his conviction for DUI. Nonetheless, having made the independent assessment that probable cause existed; we need not dismiss based on Heck's favorable termination rule alone.

on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication

16

of constitutional rights and government officials' effective performance of their duties." <u>Reichle</u>, 566 U.S. at 664.

For claims of false arrest, "the defendants are entitled to qualified immunity . . . if a reasonable officer could have believed that probable cause existed to arrest [the plaintiff] in light of clearly established law and the information the [arresting] officers possessed." <u>Blaylock v. City of Philadelphia</u>, 504 F.3d 405, 411 (3d Cir. 2007) (quoting <u>Hunter v. Bryan</u>, 502 U.S. 224, 228-29 (1991) (internal quotations omitted). Where, as here, a verified court record, which the plaintiff has attached to his brief, explains the circumstances surrounding the arrest and plainly recites that probable cause existed, it cannot be said that the arresting officers would have been on notice that their conduct was unlawful. In light of the Court's prior determination, and our independent assessment that probable cause existed, along with the verified court records showing that the officers had reason to believe probable cause existed in light of the clearly established law and information they possessed, we recommend his false arrest and false imprisonment claims be dismissed.[4]

_____

[4] To the extent that Brown alleges a Fourth Amendment failure to intervene claim against Officer Smith for failing to stop Brown from being arrested without probable cause, this claim also fails, having found that probable cause existed.

## C.   Brown Has Sufficiently Stated An Alleged Excessive Force Claim Relating to his Arrest.

At this stage it is axiomatic that our review is limited to the well-pleaded facts set forth in the plaintiff's complaint. Viewed through this analytical lens, although Brown has not cleared the procedural hurdles necessary to prevail on his claims of false imprisonment and false arrest in light of the indisputable evidence of probable cause, the circumstances surrounding the force used to effectuate his arrest are less clear. On this score, an arrestee's excessive force claim, like the claims made here, are judged against the Fourth Amendment's reasonableness standard, a constitutional benchmark which applies to local police through the Fourteenth Amendment. Thus:

> "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. Id. at 396, 109 S.Ct. 1865. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of

effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are instructed that the surrounding events must be considered from "the perspective of a reasonable officer on the scene." Id.

Samuels v. Pocono Mountain Reg'l Police Dep't, No. 3:13-CV-2922, 2015 WL 10567834, at *3 (M.D. Pa. Dec. 17, 2015), report and recommendation adopted in part, No. 3:13-CV-02922, 2016 WL 1221831 (M.D. Pa. Mar. 29, 2016).

Analyzing this particular excessive force claim in light of the multi-facetted, and fact-specific, constitutional standard of reasonableness prescribed by the courts and the Fourth Amendment, we conclude that the plaintiff has sufficiently pleaded a Fourth Amendment excessive force claim to proceed past the pleading stage. Fairly construed, the complaint alleges that Officers Monroy, Smith, and Etnoyer wrestled him into handcuffs, violently twisted his arms behind his back, and dropped him on his tailbone, causing him to be unable to sit on his backside for three weeks. At this early stage of the proceedings, where we are limited to a consideration of the pleadings alone, we believe that the plaintiff has adequately pleaded an excessive force claim. Instead, the ultimate question of the reasonableness of the use of force in this case turns on factual matters outside the pleadings. As such, this issue is not amenable to resolution through a motion to dismiss, where our judgment is cabined

and confined by the well-pleaded facts in the complaint and the motion to dismiss these claims should also be denied.

Similarly, any determination regarding whether the officers are entitled to qualified immunity on the Fourth Amendment excessive force charges will require factual development beyond the face of the pleadings. As to the first prong of the standard articulated above, we recommend the Court defer any determination regarding the constitutionality of the force used in the arrest. Nor, at this juncture, can the defendants prove as a matter of law that any constitutional violation was not clearly established where the Third Circuit has held in certain circumstances that "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established . . . [and] a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment." Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004).

Finally, it would be premature to dismiss the state law analogue claims of assault and battery. As previously noted, the defendants have not addressed these claims on the merits, but instead simply ask the Court to dismiss them based upon the plaintiff's improper reliance on the Pennsylvania Constitution in supporting his claims. Nonetheless, the torts of assault and battery are proper causes of action under Pennsylvania law, including in the context of an arrest. On this score:

> The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. See Heverly v. Simcox, No. 4:05–1370, 2006 WL 2927262, at *9 (M.D.Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763 A.2d 424, 431 n. 2 (Pa. Super Ct.2000). Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed. See Fulks ex rel. Daniel v. Gasper, 439 F.Supp.2d 372, 379 (M.D.Pa.2006); Montgomery v. Bazaz–Sehgal, 742 A.2d 1125, 1130 (Pa.Super.Ct.1999). Police officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest. See Groman, 47 F.3d at 633–34; RESTATEMENT (SECOND) OF TORTS § 118, 132 (1965) [hereinafter "RESTATEMENT 2D TORTS"]. Use of unreasonable or excessive force dissolves the privilege. Groman, 47 F.3d at 634; RESTATEMENT 2D TORTS § 133.

Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009).

Whereas here, the plaintiff has stated facts alleging that the arresting officers effectuated his arrest using an excessive degree of force, Brown has met the standard of pleading to demonstrate that the defendants committed an assault and battery in an unprivileged manner and his claims should move forward for further factual development. While we acknowledge that the defendants may assert a sovereign immunity defense to these state torts, Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 644 (E.D. Pa. 2014), they have not yet done so. Moreover, sovereign immunity determinations entail an inquiry into whether the acts alleged fell within the scope of the police officers' employment, an issue which has not yet been presented and briefed by the parties. Kintzel v. Kleeman, 965 F. Supp. 2d 601, 607

(M.D. Pa. 2013). Therefore, a ruling on these questions would be premature, and must await another day, and another motion.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motion to dismiss, (Doc. 41), be GRANTED with regard to the plaintiff's false arrest, false imprisonment, and failure to intervene claims. IT IS FURTHER RECOMMENDED that the defendants' motion to dismiss be DENIED with respect to the plaintiff's excessive force claim so that the record may be more fully developed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of September 2023.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge